WILLIAM H. WACHTER

*v.*

BENJAMIN G. BLOWNEY *et al.*

*Filed at Ottawa November 20, 1882.*

1. TRUST—*sufficiency of evidence to show.* A, in 1867, erected a block of frame buildings, obtaining money from B for some of the cost thereof, B then residing with A, and continuing to so reside until A's death, and with his widow afterward; but the proof failed to show how much money B furnished, or on what terms or understanding, except that A had often stated that one of the buildings, particularly named, belonged to B. Shortly before A's death he and his wife executed a deed to B for all the property, which was left with C, and not delivered and recorded until after A's death. The purpose of this deed was not clearly shown, but it seems to have been left with C until A and B should settle their respective dealings, and the interest of each in the property. After A's death B obtained a loan of $6500 on the property, giving a deed of trust thereon to secure its repayment, and afterward, the interest, taxes and insurance having reached $2000, and the property being advertised for sale, B applied to the directors of the Firemen's Benevolent Association to advance money to save the property for A's widow and minor children, disclaiming title, and offering to waive any rights he might have, and to induce that association to aid the widow, voluntarily conveyed the property to her. That body paid the interest, taxes, etc., and

the widow gave it her note for $1200, secured by deed of trust on the property. She died, having devised the property to the association in trust for her minor children, when B filed his bill claiming an equitable title in the property, and seeking to have his quitclaim deed to the widow and her will as to the property set aside, and asking to be decreed the owner of the property: *Held,* that the evidence failed to establish a trust, or show any kind of equitable title in B authorizing or requiring a conveyance to him of any portion of the property.

2. WITNESS—*competency as against heirs defendant.* On bill in chancery against the widow and heirs of a deceased person, seeking a conveyance of real estate held by the father of the heirs at his death, the complainant is not a competent witness to testify in his own behalf to anything occurring before the death of the ancestor of the defendant heirs.

3. CHANCERY PRACTICE—*dismissal of cross-bill on dismissal of original bill.* Where an original bill is dismissed, on the hearing, for want of equity, there is no error in dismissing also a cross-bill by the defendants, which only seeks to dispossess the complainant from real estate, when the defendants' remedy for possession is complete and adequate at law.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Mr. A. GARRISON, for the appellant:

When the deed of Chappell and wife to Wachter was acknowledged, the latter was the owner in equity of the north house on State street. Prior to that time Chappell held the title thereto, in trust for him. A resulting trust can be proved by parol. Rev. Stat. 1874, p. 541, sec. 9; Perry on Trusts, secs. 96, 97, 99, 124, 137, 138, 139; *Brown* v. *Williams,* 14 Ill. 200.

It can make no odds in principle, in equity, whether Wachter furnished money towards paying for the lots, or to pay to construct the block,—it took both to make the block. Besides, if Wachter's judgment was then (1867) enforced, Chappell could not have built at all. 2 Story's Equity Jur. 1156.

When a deed is delivered *in escrow,* if the conditions are not complied with until after the grantor's death, the title passes. *Stone* v. *Duval,* 77 Ill. 475; *Skinner* v. *Baler,* 79 id.

480; *Shirley* v. *Ayers*, 14 Ohio, 307; *Price* v. *Chicago, Pittsburg and Fort Wayne R. R. Co.* 39 Ill. 13; *Wiggins* v. *Lark*, 12 id. 132; *Revard* v. *Walker*, 39 id. 413; *Union Mutual Ins. Co.* v. *Campbell*, 95 id. 287; *Gun* v. *Cockerill*, 84 id. 319; *Jackson* v. *Collin*, 2 I. R. 248.

The facts show that the quitclaim deed made by complainant to Mrs. Chappell of the lots was only intended as a security for the money to be loaned to aid her and her family, by the Firemen's Benevolent Association. She held the title in trust for Wachter. Perry on Trusts, secs. 161, 162.

That the same was only a mortgage, being given for security of money to be advanced, can be shown by parol. Jones on Mortgages, secs. 241, 250, 253, 255, 257, 258; *Ewarts* v. *Walling*, 42 Ill. 453; *Cornell* v. *Hall*, 22 Mich. 377; *Owen* v. *Blake*, 44 Ill. 135.

Wachter always kept possession. *Brown* v. *Gafney*, 28 Ill. 149; *Furgeson* v. *Stephens*, 3 Gilm. 565; *Miller* v. *Thomas*, 14 Ill. 428; *Smith* v. *Sackett*, 15 id. 528; *Williams* v. *Bishop*, id. 553.

Wachter was a witness to all transactions after the death of Chappell and wife. He should have been allowed to testify. *Crane* v. *Crane*, 81 Ill. 165.

Mr. H. W. WOLSELEY, for the appellees:

The furnishing of money by Wachter to aid Chappell in erecting buildings, furnished no equitable claim to the property improved by his money. This is a purely legal indebtedness, and should be presented to the probate court for allowance. *Hales* v. *Holland*, 92 Ill. 497; *Blanchard* v. *Williamson*, 70 id. 651; *Dewey* v. *Eckert*, 62 id. 220.

The Statute of Frauds being pleaded, all verbal statements by Chappell as to ownership must be regarded as incompetent testimony. *Kane County* v. *Harrington*, 50 Ill. 232.

The burden was upon appellant to prove title, and the defendants in interest being minors, it is essential the record

should show that the proofs fully sustain the allegations of the bill. *King et al.* v. *Worthington*, 73 Ill. 162.

There was no error in refusing to allow appellant to testify. in his own behalf. *Stone* v. *Cook*, 79 Ill. 428; *Fischer* v. *Fischer*, 54 id. 235; *Mixell* v. *Lutz*, 34 id. 382; *King et al.* v. *Worthington*, 73 id. 164; *Crane* v. *Crane*, 81 id. 166; *Marshall* v. *Peck*, 91 id. 187.

The court erred in dismissing the cross-bills, and refusing to grant any relief thereon. The defendants were entitled to a decree for the surrender of the possession of the property held by Wachter.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This bill was filed by appellant, against appellees, in the Cook circuit court. To it all of the defendants filed answers, and the Firemen's Benevolent Association filed a cross-bill, asking to be allowed to execute the trust created by the will of Mrs. Mary Jane Chappell, deceased, widow of Delos N. Chappell, deceased. The minor defendants, William H., Horatio S., and Ida E. Chappell, by their guardian, also filed a cross-bill,—to both of which answers were filed, and there were replications to the answers. The case was heard on the proofs, and the bill and cross-bills were dismissed, and complainant brings the record to this court, and assigns errors.

It appears, from the evidence, that Delos N. Chappell, in the year 1867, purchased and received a conveyance of certain real estate in the city of Chicago, on which he erected a block of frame houses. Appellant advanced money to aid in their erection, and Chappell made statements that the north house of the block was being built for appellant, who lived with Chappell from that time until the death of Chappell, and afterwards with his widow, until her death. There is no evidence that this money was ever paid. Chappell died in March, 1876, leaving surviving him Mary Jane, his widow,

a daughter by a former wife, Didama Reeve, and his infant children, William H., Horatio S., and Ida E. Chappell.

After Chappell's death, a deed from him and his wife to appellant, for the block of buildings, was placed on record. It bore date December 10, 1874, and was acknowledged on the 26th of that month. In the month of January, 1877, appellant procured a loan of $6500, on five years' time, at nine per cent interest, and to secure its payment he executed a trust deed on the premises to Adolph Loeb, as trustee. On the 6th of January, 1879, the interest on the loan, taxes and insurance, then unpaid, amounted to about $2000, and the property having been advertised for sale under the power contained in the trust deed, appellant attended a meeting of the directors of the Firemen's Benevolent. Association, and requested them to take some action in the matter for the benefit of the widow and heirs of Delos N. Chappell, and proposed that if they would protect the widow and children, he would waive any claim he had to the property, and offered to convey any interest he might have in the property to Mrs. Chappell. To carry out the arrangement, he quitclaimed the property to her. The association paid the taxes, interest and insurance, and for a portion of the sum so paid she executed a note for $1200, with interest at eight per cent, and to secure the same she executed a trust deed on the property to Thos. E. Miller, as trustee. The association, by arrangement with Mrs. Chappell, took possession of the property, except some rooms occupied by her and her children and appellant, and a small store in the rear. The association paid the taxes, insurance, and interest on the trust deeds, and to Mrs. Chappell means for the support of herself and family, from the rents of the property, until the time of her death, which occurred the 22d of July, 1880. She left her children surviving her. She made and published her last will, which was duly admitted to probate. By it she devised this real estate to the association in trust, for the benefit of

her children. ' She appointed B. G. Blowney executor of her will, and appointed him testamentary guardian of her children. She bequeathed certain articles of personal property to her executor, and to Didama Reeve. After her death the association continued in possession of the property, except appellant still retained possession of the rooms occupied by Mrs. Chappell in her lifetime. He filed this bill to set aside the quitclaim deed executed by him to Mrs. Chappell, and her will, so far as they affected the title to this property and the personal property which he claimed to own.

Has appellant shown an equitable title to the property, or any portion of it? It is not claimed that he holds any other. His claim is founded on the fact that he furnished means, as far back as in 1867, to aid Chappell to erect the block of buildings, and that he, as early as in 1862, held a judgment for $1600 against Chappell, and that he and his wife conveyed the property to appellant, and that Chappell always spoke of and recognized the property as belonging to appellant. The evidence is indefinite as to the amount thus advanced, or the terms upon which it was furnished. The evidence does not prove that there was any definite understanding in reference to the matter, and we are inclined to believe there was none. The testimony shows that Chappell repeatedly said the north building in the block was appellant's; but when Chappell executed the deed, and left it with Boone, it was understood he was to hold it until they could settle their affairs in reference to the property. From this it is manifest that at that time it was not understood the property was that of appellant, and the title was not to vest in him until a future time. Whether this deed was executed to vest the title in appellant when the parties settled and ascertained their several interests in the property, or for the purpose of effecting the $6500 loan from Loeb, the evidence does not clearly establish. After the deed was recorded

that loan was effected, and some of the evidence tends to show that such was the purpose of the conveyance.

But be this as it may, appellant applied to the association, and urged the directors to take charge of the matter, and save the property for the widow and children.    He said, although the title appeared to be in him, that he would waive his rights if the association would take hold of the property, and save it for the widow and children.    He volunteered to surrender all of his claims if the association would take charge of the property, and save it from the foreclosure sale, for which notice had been given.    He was fully aware that unless this, or some other arrangement, could be speedily made, the property must be lost to the family, and any interest he may have had would be foreclosed, and cut off beyond redemption.    The time was short in which to prevent the pending sale.    He therefore seems to have sacrificed little or nothing in voluntarily surrendering any interest he may have had in the property, as it was on the verge of being swept away by the sale. · So far as the evidence discloses, he had no prospect of protecting his interest, if he had any, and this was the only hope of saving something for the widow and children.    He did not ask the association to aid him, and some of the officers testify they would not, had he asked it.    He stated to Miller and Sweenie that he had no interest in the property when he was urging that the association should protect the rights of the widow and children, and the evidence is clear and satisfactory that he conveyed the title to Mrs. Chappell voluntarily, the officers not even demanding that he should convey to her.

This evidence that appellant considered the equitable title was in the widow and children, is clear and convincing. Had he regarded his interest as amounting to any substantial claim, it is unaccountable that he did not disclose it, and endeavor to have it protected.    So far from doing so, he disclaims any interest in the property, urges its protection, but

not for himself, and conveys to the widow to accomplish the purpose sought. From this we are compelled to believe that he knew he had no well founded claim to the property, or he would have asserted it when urging the association to protect the Chappells' rights. Nor is this overcome by the declarations of Chappell in his lifetime, that appellant was the owner of the north house in the block. These declarations were no more specific than appellant's that he had no interest in the property, made long subsequent to Chappell's statements. Chappell's declarations, and the proof that appellant furnished money to aid in erecting the building, and even the conveyance to appellant, if it were conceded the deed was properly delivered, are not sufficient to overcome the conveyance to Mrs. Chappell, accompanied as it was by his disclaimer of ownership and waiver of all claim to the property. He failed to establish a trust, or any kind of title, authorizing or requiring a conveyance of any portion of the property to him.

Appellant urges that the court erred in not permitting him to testify in the case. He is excluded by the statute from testifying to anything occurring before the death of Chappell or his widow, and he proposed to testify to nothing that occurred subsequently. There was, therefore, no error of the court in this ruling.

Appellees assigned cross-errors, and insist that the court should have decreed appellant to surrender possession. Such relief is purely legal, and appellees have shown no reason why it could not be had at law. They do not claim that there are legal obstructions to a recovery at law, or legal titles in the way, or any reason for the interposition of a court of equity. When complainant failed to establish a right to the relief sought, and his bill was dismissed, there was nothing further for the court to act upon. The cross-bills only sought relief that could be had at law. Had they sought equitable relief, and it had been sustained by the

proofs, then it would have been the duty of the court to have granted it; but as the remedy at law is adequate, the court did not err in dismissing the cross-bills.

The decree of the court below must be affirmed.

*Decree affirmed.*