(No. 28613.—

WALTER SIMS, Appellant, *vs.* HATTIE POWELL, *et al.*,
Appellees.

*Opinion filed May 23, 1945—Rehearing denied September 17, 1945.*

HOWARD D. GETER, of Chicago, for appellant.

ARONSON & ARONSON, of Chicago, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

Ruth Crisp Sims, a resident of Chicago, died intestate June 10, 1943. She left surviving, as her heirs-at-law, her husband, Walter Sims, her mother, Hattie Powell, and ten brothers and sisters. July 2, 1943, Walter Sims was appointed administrator of the estate of his deceased wife. Shortly thereafter, on July 15, he sued out a citation in the probate court of Cook county against Hattie Powell and four others to recover property. From the citation it appears that in a verified petition (not incorporated in the record) Sims charged the five persons named had in their possession or control or had concealed, converted or embezzled certain personal property belonging to Ruth Sims or her estate. Hattie Powell filed a petition and counterclaim to the citation, representing that, in March, 1940, she purchased a Buick automobile and took title to the car in the name of her daughter who had no interest in the car and merely held title for and on behalf of herself, the counterclaimant; that she, Hattie Powell, had possession of the car at all times from the date of its purchase, and that she was entitled to $87.22 on deposit in a bank account in the name of decedent. October 19, 1943, an order was entered by the judge of the probate court finding that the court had jurisdiction of the subject matter and the parties; that Hattie Powell was the sole legal and equitable owner of three parcels of real estate in Chicago, the same real estate involved in a subsequent action in the superior court of Cook county and upon this appeal; that she owned the Buick automobile and $87.22 in a savings account in the name of Ruth Sims in a Chicago bank, and that she was, also, the sole legal and equitable owner of a restaurant located at 5113 Prairie Avenue, Chicago, and, further, that the administrator had no interest in any of the property, real or personal. Sims was directed to transfer the funds in the savings account to Hattie Powell and to execute a

transfer of title to the automobile to her. The order concluded by discharging the citation against Hattie Powell and the four other respondents. To the left of the signature of the judge of the probate court appears the following: "We consent & agree to the above order, Walter Sims, administrator, Sidney P. Brown, attorney for administrator, Charles A. Wilson, attorney for administrator, Aronson & Aronson, attorneys for respondents to citation." On the margin of the last page of the order the following appears: "It being further represented to the Court that all of the parties in interest were present in open Court; that there are no other assets in the estate for further administration, therefore It is ordered and decreed that the administrator is hereby discharged, the bond released and the estate is hereby closed." Subsequently, Sims filed a petition in the probate court to vacate the order of October 19. By this petition, he charged that the restaurant business in Chicago actually and equitably belonged to his deceased wife, irrespective of the ostensible ownership to the contrary; that all of the property located in Chicago purporting to belong to Hattie Powell, in fact, belonged to the estate of the decedent for the reason that the property was obtained by her money and efforts without any financial assistance from her mother, "who had none to give;" that no hearing was ever had on the petition and crosspetition to discover assets; that the estate was closed purportedly by agreement, but that certain facts had since come to his attention causing him to believe that the closing of the estate was a fraud upon the court; that he claimed a resulting trust in favor of decedent and himself involving both her real and personal property; that he intended to assert these rights and establish these trusts in the circuit or superior court of Cook county; that the citations to discover assets should be heard and passed upon by the probate court, and that the estate should be kept open for the benefit of the court, various taxing

bodies which might be entitled to taxes, and himself. Sims charged further that he loaned and contributed several thousand dollars to his wife for use in the development of her restaurant business and the purchase of the real estate and automobile; that he never received anything of value in return; that this money was due and owing him, and that he claimed in his own name and right a part or all of the assets of the estate of the decedent under a resulting trust. The relief sought was that the order closing the estate be vacated and set aside; that the estate be reopened; that he be reinvested as administrator; that the processes on the citations to discover assets be reissued, and that the court control the estate and dispose of the issues therein until the statutory time for closing it should have elapsed. The five respondents to the citation proceeding answered the petition to vacate the order of October 19, 1943, averring that the hearing on the petition to discover and recover assets was set for October 18, 1943, that they, approximately twenty witnesses in their behalf, and the petitioner were present in court throughout the day of October 18, and again on October 19, and ready to proceed with a hearing, remaining in the courtroom until 4:30 o'clock in the afternoon when the matter was called for trial; that the petitioner and his attorneys made a statement to the court and presented an agreed order signed by the petitioner, his attorneys and respondents, and requested its entry; that petitioner and his attorneys represented they were satisfied with the arrangement they had made and the entry of the order; that, in response to interrogation by the court, the petitioner stated he was satisfied that the order be entered; that petitioner further represented there were no other assets, and agreed to the closing of the estate, that he be discharged as administrator, and that the citations be discharged. November 16, 1943, the probate court denied the motion to vacate the order of October 19, and, on motion of Sims, the respond-

ents were ordered to deposit $1000 with the clerk of the court "pending an appeal on motion to vacate order of Oct. 19, 1943, said $1,000 being subject to terms of said order, and same to be paid to Walter Sims upon his execution of quitclaim deed to realty listed in the order of Oct. 19, 1943, and upon execution by him of a general release to the respondents to citation herein." It would appear from the requirement of the payment of $1000 to Sims that he and his deceased wife's relatives had amicably settled their differences. Petitioner prosecuted an appeal to the circuit court of Cook county. A trial *de novo* resulted in an order on June 29, 1944, adjudging that the motion and petition to vacate the order of the probate court of October 19 be denied and overruled. No appeal was taken from the order of the circuit court, and it has long since become final.

August 21, 1944, the plaintiff, Walter Sims, filed his complaint in the superior court of Cook county against the defendants, Hattie Powell, the ten brothers and sisters of Ruth Sims, deceased, and the wife of one of the brothers. His complaint charges a conspiracy on the part of the defendants to deprive him of his inheritance as the surviving husband of Ruth Sims, deceased; that they claimed and are claiming all the assets which belonged to his wife, as the property of Hattie Powell; and that the title to the real estate previously mentioned belonged to his wife, who paid the entire purchase price of each parcel, but "because of lawsuits arising out of her business and her matrimonial trouble" title to two parcels was taken in her mother's name and to the third in the name of a brother and a sister. Plaintiff asked an accounting of all the properties and the transactions incident thereto; that any personal property found to belong to his deceased wife, or himself, and withheld by defendants be turned over to him; that the bank account, the automobile and the restaurant, together with

all its furniture and fixtures, be decreed his sole property, and that, as the surviving spouse of Ruth Sims, deceased, he be adjudged the owner of a one-half interest in the real estate. Defendants interposed a motion to dismiss the action upon the ground that the claims in plaintiff's complaint had been previously and finally adjudicated. An affidavit of Hattie Powell supporting their motion to dismiss recounted the citation proceedings in the probate court of Cook county, the motion to vacate the order of October 19, 1943, and stated that plaintiff's motion to vacate the consent order made the same charges, in substance, as the present action. The cause was heard upon the pleadings in the superior court, and an order was entered October 27, 1944, dismissing the cause and assessing costs against plaintiff. He has prosecuted an appeal to this court, a freehold being necessarily involved.

To obtain a reversal, plaintiff contends that the superior court erred in holding that the order of the probate court of October 19, 1943, was a bar to his complaint. In particular, he argues that the doctrine of *res judicata* operates only as an absolute bar to another action between the same parties on the same claim where the court had jurisdiction, rendered judgment on the merits and did not exceed its jurisdiction. He contends that the citation to recover property discloses on its face that the only question presented to the probate court was whether the five respondents cited had in their possession or control, or had converted or embezzled certain property belonging to Ruth Sims or her estate. So far as the order of October 19, 1943, is concerned, the gist of his contention is that it was effective only in ordering the citation discharged against the five persons cited. He points out that the probate court has no general chancery jurisdiction, and, consequently, no jurisdiction over the subject of trusts; that real estate descends immediately to a decedent's heirs-at-

law, unless devised otherwise, and that a citation proceeding to recover property in the probate court is not an appropriate proceeding for the determination of title to real estate.

To sustain the decree, defendants maintain that the order in the citation proceedings is a bar to plaintiff's present action for the reason that the same subject matter was adjudicated against him and in favor of the respondents not only in the citation proceeding in the probate court but, again, after a trial *de novo* in the circuit court on appeal. Both plaintiff and defendants place reliance upon the doctrine of *res judicata*. Defendants rely upon decisions holding that the doctrine extends not only to questions actually decided but to all grounds of recovery or defense which might have been presented. (*Harding Co.* v. *Harding,* 352 Ill. 417.) *Merrill* v. *Merrill,* 187 Ill. App. 589, is cited as being directly in point. The Appellate Court, in the case cited, did hold that a judgment of the county court in a citation proceeding, having become final by the subsequent dismissal of the appeal of the administrator, was a bar to an independent action to recover the same property. Defendants erroneously state, however, that both real estate and personalty were involved in the citation proceeding. Personal property, only, was involved. *Wade* v. *Prichard,* 69 Ill. 279, also supports defendants, so far as the personal property is concerned. Plaintiff urges that the doctrine of *res judicata* does not aid defendants since the probate court exceeded its jurisdiction in making a finding with respect to the ownership of the real estate. Defendants answer that section 183 of the Probate Act, authorizing citations to recover property and discover information, and section 185 providing that, upon a hearing of the petition, the court "may determine all questions of title, claims of adverse title, and the right of property, and may enter such orders and judgment as the case requires," empower the probate court to

settle titles to real estate. (Ill. Rev. Stat. 1943, chap. 3, pars. 335 and 337.) Defendants cite no authority supporting their assertion, and we have found none. The remedy provided by these statutory provisions is for the recovery of personal property, books of account, papers, or evidences of debt or title to lands which belonged to a person whose estate is being administered in the probate court or which belongs to his estate or to his personal representative. The relevant provisions of the present Probate Act are substantially the same as sections 81 and 82 of the Administration Act, as amended in 1925, (Ill. Rev. Stat. 1939, chap. 3, pars. 82 and 83,) and in force prior to January 1, 1940, the effective date of the new law. Neither the present nor the former provisions confer, or even purport to confer, upon probate courts general equity jurisdiction and, specifically, the power to determine titles to real estate in citation proceedings. (*Wilson* v. *Prochnow,* 359 Ill. 148; *Johnson* v. *Nelson,* 341 Ill. 119; *In re Estate of Miller,* 311 Ill. App. 280.) It follows necessarily that the order of October 19, 1943, of the probate court is not a bar to the portion of plaintiff's complaint in the superior court seeking to have himself adjudged the owner of an undivided one-half interest in the real estate alleged to have been owned by his deceased wife, even though it be *res judicata* as to the part of the present claim seeking recovery of personal property.

The foregoing conclusion, however, is of but little aid to plaintiff, as the order of October 19, 1943, was a final consent judgment. The law is firmly established that where parties who are competent to contract agree to the rendition of a judgment or decree with respect to any subject which may be the subject of litigation, the final order, when entered, is by consent. Moreover, a consent decree is not a judicial determination of the rights of the parties as it does not purport to represent the judgment of the court but merely records the agreement of the parties. A

decree so entered by consent cannot be reviewed by appeal or writ of error and can only be set aside by an original bill of review. (*Bergman* v. *Rhodes,* 334 Ill. 137; *Mooney* v. *Valentynovicz,* 262 Ill. 355; *Galway* v. *Galway,* 231 Ill. 217; *Krieger* v. *Krieger,* 221 Ill. 479.) The order of the probate court of October 19, 1943, was agreed to not only by the plaintiff in the present action but, also, by two attorneys who then represented him and the respondents to the citation proceeding. Again, the subsequent order denying his motion to vacate the consent order discloses that, upon plaintiff's motion, the adversaries were directed to pay $1000 to the clerk of the probate court to be held for and on behalf of plaintiff. Tested in the light of the applicable principles, the order of October 19, 1943, was, in effect, a contract between the parties which was binding on them in this case. Plaintiff, so far as the record discloses, was competent to make a contractual agreement with the mother, brothers and sisters of his deceased wife resolving the question of ownership of both real and personal property claimed by the respective parties. The order of October 19, 1943, of the probate court merely recorded their agreement, as did the later order of November 16, 1943, directing the payment of $1000. Plaintiff enjoyed the right to consent, if he so elected, to the order in the form in which it was entered, and, when entered, it became immune to subsequent challenge by him. The error, if any, in entering the order was the error of the parties and not of the court. (*Krieger* v. *Krieger,* 221 Ill. 479.) Manifestly, plaintiff cannot succeed in his indirect attack upon the order of October 19, 1943, when a direct assault would have been futile, and, particularly, since he was benefited by the provision in the order of November 16, 1943, for the payment of $1000 to him.

The decree of the superior court is right, and it is affirmed.

*Decree affirmed.*